FILED
2021 Jul-22  AM 08:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| LUCRETIA BISSINGER, | } |
| | } |
|     Plaintiff, | } |
| | } |
| v. | }   Case No.:  4:20-cv-00533-RDP |
| | } |
| ANDREW SAUL, COMMISSIONER, | } |
| SOCIAL SECURITY ADMINISTRATION, | } |
| | } |
|     Defendant. | } |

## MEMORANDUM OF DECISION

Plaintiff Lucretia Bissinger brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB"). *See also*, 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.    Proceedings Below

Plaintiff filed her application for disability and disability insurance benefits on October 31, 2016, in which she alleged that disability began on May 1, 2015. (Tr. 287, 361).  Plaintiff's application was initially denied by the Social Security Administration on March 10, 2017. (Tr. 287). Plaintiff then requested and received a hearing before Administrative Law Judge Doug Gabbard, II, on January 9, 2019. (Tr. 175-206, 360). In his decision, dated March 27, 2019, the ALJ granted Plaintiff a partially favorable decision. The ALJ determined Plaintiff was under a disability from May 1, 2015 through October 11, 2017; however, the ALJ further determined that

beginning October 12, 2017, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404. 1520(d), 404.1525 and 404.1526). (Tr. 155). Plaintiff's request for further review by the Appeals Council was denied, making the ALJ's decision the final decision and a proper subject of this court's appellate review. (Tr. 1).

Plaintiff was fifty-eight years old at the time of the hearing. (Tr. 363). She graduated high school and has roughly 10 to 12 college credit hours. (*Id.*). Plaintiff has past work experience as an office manager and shipping manager at a metal fabrication plant, and she has part-time work experience as a bank teller, and daycare worker. (Tr. 188). As an office manager Plaintiff handled account payables and receivables and loaded and unloaded trucks, which required lifting boxes of paper weighing approximately twenty pounds. (Tr. 185). As a part time bank teller, Plaintiff would occasionally lift cash boxes that "weren't always heavy" (weighing ten pounds at most). (Tr. 187). At the daycare center Plaintiff mostly sat and rocked babies. (Tr. 188).

Plaintiff alleges that she has been disabled since May 1, 2015 and since that time has been unable to hold a full-time job due the following: back problems, which have required three back surgeries; neck problems, which also required surgery; a disc problem in her hip; and a problem with her sacroiliac "SI" joints. (Tr. 189). Plaintiff further alleges disability due to bulging discs, bone spurs, bursitis in her hips, an irregular heartbeat, hypothyroidism, irritable bowel syndrome, migraines, and possible sleep apnea. (Tr. 156).

Plaintiff was seen at Northeast Alabama Neurological for back and leg pain beginning in July 2015. (Tr. 724). Dr. James White found Plaintiff had multiple bulging discs at L2 through L5 along with "a questionable area of abnormality" at L4 which "could possibly represent a spondylolisthesis along with severe chronic hip pain". (Tr. 725). Dr. White order an MRI and

determined Plaintiff had bilateral lateral recess stenosis at L4, with a suggestion of anterolisthesis at this level. (Tr. 736). After experiencing no relief from epidural steroid injections, Plaintiff elected to undergo a decompressive lumbar laminectomy and interbody fusion at L4. (Tr. 464). After that surgery Plaintiff was reported to be "doing well," and Dr. White opined "I really feel she is okay" and that "her second set of cervical spine x-rays look good". (Tr. 714). As of November 11, 2015, Plaintiff reported she was "doing well" and despite normal x-rays, she complained of severe pain in the area of her bilateral SI joints. (Tr. 157, 719). On December 9, 2015, Plaintiff stated to Dr. White that physical therapy was "really helping her," but the SI joint injections were not.  (Tr. 718).  And, she was told by the therapist that she has severe scoliosis in the cervical and thoracic region. (*Id*.). An MRI of her cervical and thoracic spine, on December 22, 2015, revealed mild to moderate canal stenosis at C3 and C4 without evidence of myelomalacia, and a normal thoracic spine. (Tr. 731, 732).

On January 8, 2016, Dr. White opined Plaintiff's reported unbearable headaches could be caused by her C3 osteophytosis, and recommended she undergo a one level anterior C3 discectomy. (Tr. 716, 717). Despite complaints of chronic headaches, an MRI and EEG revealed no significant abnormalities. (Tr. 590, 597, 599). Plaintiff again complained of SI joint pain but Dr. White "told her we will take care of one problem at a time." (Tr. 716).

On February 11, 2016, Plaintiff underwent an anterior cervical 3-4 discectomy and fusion. (Tr. 506, 602). After that surgery Plaintiff was noted to be "doing exceptionally well." (Tr. 715). Nonetheless, six months later Plaintiff complained of tenderness and pain in her lumbar spine/SI joints, and an MRI revealed moderate canal stenosis at L3-4 and a normal postoperative lumbar spine. (Tr. 713, 738).

On November 21, 2016, pursuant to Plaintiff's complaints of chronic pain, Dr. White referred her to pain management with Dr. Born. (Tr. 712). On December 20, 2016, Plaintiff was diagnosed with failed back syndrome and told Dr. Born that, after taking a low dose of Norco, she was feeling "much better." (Tr. 907). Dr. Born commented that "[Plaintiff] looks better." (*Id.*). On January 3, 2017, Dr. Glen Wilson noted "[f]ollow up after SI joint injection on 12/5/16, injection helped a lot, her pain just recently came back." (Tr. 747) (cleaned up). On January 17, 2017, Dr. Born acknowledged that Plaintiff "has low grade back pain" and the low dose of Norco "seems to be controlling her situation quite well." (Tr. 906). Starting April 2017, Plaintiff expressed how she was hurting "more than ever," and on June 6, 2017 she reported to Dr. Born that she was "feeling terrible" and was going to see a neurosurgeon the next day because "she needs to have something done." (Tr. 158, 900, 903).

On June 7, 2017, Dr. White determined another surgery was needed for an extension of the fusion one level to the L3 level as Plaintiff had failed epidurals and pathology above the level of her previous fusion at L3. (Tr. 863). After that surgery Plaintiff began to experience spinal headaches and another surgery was performed on July 14, 2017 to repair what was later discovered to be a dural tear. (Tr. 784-802). On August 9, 2017, Dr. White noted that Plaintiff "is doing well," has no headaches, and that her main issues now were related to depression because she was "frustrated" not being allowed to have sex yet. (Tr. 920). Following up with pain management on August 31, 2017, Plaintiff reported her back was hurting less and Dr. Born reported Plaintiff was "doing better" and "seems to be doing well" for only being out of surgery for two months. (Tr. 898). Pursuant to Plaintiff's request, Dr. Born reduced Plaintiff's dose of Norco from four to three pills per day. (*Id.*).

On September 21, 2017, Dr. Born noted Plaintiff "is better," "steadily and slowly improving," "down to three Norco a day," and "[s]he is hoping to get off them completely." (Tr. 897). Returning to Dr. White on October 11, 2017, he found Plaintiff was "doing excellent," her x-rays looked good, therapy was no longer needed, and Plaintiff was released from Dr. White's care. (Tr. 918). On December 1, 2017, Plaintiff returned to Dr. Born who noted she had recent chronic renal insufficiency and marked tenderness in both SI joints; however, he reported the rest of her examination was nonyielding. (Tr. 891). Plaintiff also was assessed a diagnosis for sacroiliac inflammation and sacroiliitis.  (*Id*.).  Plaintiff was instructed to stop taking her anti-inflammatory medication and was prescribed Lidoderm patches as a replacement anti-inflammatory medication, as well as switched from Norco to Percocet 10. (*Id*.). On a follow up visit on December 22, 2017, Plaintiff was noted to have some point tenderness and pain with straight leg raising; however, she was also observed as having a good range of motion and was pleased with the medication adjustment and was "doing well." (Tr. 890). On January 19, 2018, a physical exam revealed Plaintiff's biggest complaint was she was depressed.  (Tr. 889). Plaintiff was found to have no abnormalities despite reporting chronic back pain. (Tr. 889). She was taking 4 pain pills per day, and Dr. Born noted she was doing well on her current regimen. (*Id.*).

On May 10, 2018, Dr. Born noted Plaintiff complained of constipation, but her Percocet prescription was working and "seem[ed] to be doing well otherwise." Dr. Born switched Plaintiff's Norco prescription to Percocet. (Tr. 982).  On July 20, 2018, Plaintiff was seen at the emergency room and after a full work up, an MRI, a colonoscopy, and an upper endoscopy results did not reveal any significant abnormalities aside from findings of chronic antral distal body gastritis with a small superficial erosion; a small rectal polyp ablated; and a small nodule in terminal ileum. (Tr.

994,1025-68). Plaintiff's constipation and gastritis were treated with an prescription for omeprazole. (*Id*.).

On September 5, 2018, Plaintiff reported to Dr. Born that she felt terrible, her stomach was terrible, she had lost twenty-five pounds, had been off her Percocet for three days, and was vomiting and nauseated. (Tr. 977). Plaintiff was prescribed buprenorphine/naloxone. (*Id*.). The next day Plaintiff called Dr. Born's office and reported that she "felt good" and it was "possible that the diarrhea, shakes, and emotional state were withdrawals from the Percocet." (*Id.*). Further, she reported that she had "been off the pain medication for four days, felt good, and did not want anymore." (*Id.*).

## II.    ALJ Decision

The ALJ determined Plaintiff last met the insured status requirements of the Act through December 31, 2017. (Tr. 153). The ALJ found Plaintiff had not engaged in substantial gainful activity since May 1, 2015, the date she became disabled. (*Id*.). For the period of May 1, 2015 through October 11, 2017, the period during which Plaintiff was under a disability, Plaintiff had the following severe impairments: degenerative disc disease of the back/failed back syndrome/post laminectomy syndrome with radiculopathy/neuropathy; SI joint inflammation/sacroiliitis; chronic pain syndrome; and essential hypertension. (*Id*.). However, during that same time period, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 155). The ALJ determined that during that period, Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following exceptions: only occasional climbing of ladder, ropes, or scaffolds; frequent balancing; occasional kneeling and crouching; no crawling; avoidance of concentrated exposure to extreme temperatures

and vibration; and avoidance of all exposure to hazards such as open flames, unprotected heights, dangerous moving machinery; and Plaintiff must be allowed frequent unscheduled work absences. (Tr. 156).[1] Based on Plaintiff's RFC during that period, the ALJ concluded Plaintiff was unable to perform any past relevant work and was declared disabled. (Tr. 160-16). Subsequently, the ALJ determined that Plaintiff did not develop any new impairment or impairments since October 12, 2017, the date Plaintiff's disability ended, and her severe impairments were the same as that present from May 1, 2015 through October 11, 2017. (Tr. 161).

Beginning October 12, 2017, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404 Subpart P, Appendix 1. (Id.). The ALJ found that medical improvement occurred as of October 12, 2017, the date Plaintiff's disability ended. (Tr. 162). The ALJ also found that the medical improvement that occurred was related to her ability to work because there was an increase in Plaintiff's RFC. (*Id.*).

Beginning October 12, 2017, the ALJ found Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except she could occasionally climb ramps or stairs; no climbing ladders, ropes, or scaffolds; she could frequently balance; occasionally kneel and crouch; she could not crawl; she needed to avoid concentrated exposure to extreme temperatures and vibration; and she needed to avoid all exposure to hazards such as open flames, unprotected heights, and dangerous moving machinery. (*Id.*). Given Plaintiff's RFC, the ALJ found that, beginning October 12, 2017, Plaintiff could perform past relevant work as an office manager, shipping clerk, and bank teller. (Tr. 164). Accordingly, the ALJ found Plaintiff's disability ended October 12, 2017, and she has not become disabled again since that date. (Tr 165).

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §404.1527(b).

## III.     Plaintiff's Argument for Reversal

Plaintiff asserts that the ALJ erred in finding that there was medical improvement related to her the ability to work, and an increase in her RFC such that she could perform light work, because (1) there is no substantial evidence of improvement to the point of no disability, and (2) there was no comparison of her original medical records to the "new" medical evidence. (Doc. #16 at 14).

## IV.     Standard of Review

Judicial review of disability claims under the Act is limited to whether the commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cor. 1983)). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also* Martin, 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Under the limited standard of review, this court does not "decide facts anew, reweigh the evidence, or substitute its judgement for that of the Commissioner." *Mitchell v. Comm'r, Soc. Sec. Admin*., 771 F.3d 780, 782 (11th Cir. 2014). Even if this court would have reached a contrary result as the finder of fact, and even if a preponderance of the evidence weighs against the Commissioner's

decision, this court must affirm if substantial evidence supports the Commissioner's decision. *See id.*; *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

## V.   Discussion

For the reasons stated below, and after careful review, the court concludes the ALJ's determination is due to be affirmed.

### a.   The ALJ Did Not Err As Plaintiff Could Perform Light Work Starting October 12, 2017

Plaintiff first argues that the ALJ erred because "there can be no termination of benefits unless there is substantial evidence of improvement to the point of no disability" and in the case at bar there is no substantial evidence that she improved to that point. (Doc. #16 at 14, 15). The court finds no legal support for this argument. Indeed, the basis of Plaintiff's argument is case law precedent that has since been superseded by 20 C.F.R. § 404.1594.

Plaintiff cites *Simpson v. Schweiker*, 691 F.2d 969 (11th Cir. 1982), for the proposition that there can be no termination of benefits unless there is substantial evidence of improvement to the point of no disability. (Doc. #16 at 14). Plaintiff also references *McAulay v. Heckler*, 749 F.2d 1500 (11th Cir. 1985), an Eleventh Circuit case in which an ALJ based his opinion of medical improvement primarily upon reports by the claimant's treating physician, which indicated the claimant had improved. However, while it was true that these reports demonstrated the claimant's condition improved over time, they did not reflect improvement to the point of no disability. In *Heckler*, the court reasoned that because the ALJ failed to properly address the issue of improvement and the medical evidence did not indicate improvement to the point of no disability, the resulting determination was insufficient to satisfy the Commissioner's burden under *Simpson*. *Id.* at 1501.

Here, the ALJ employed the specific sequential evaluation process to be used in determining whether Plaintiff's disability has ceased. (Tr. 161-65). *See* 20 C.F.R. § 404.1594. As part of this process, the ALJ generally considers whether a claimant has experienced medical improvement in her condition. *See* 20 C.F.R. § 404.1594(a), (f). Medical improvement is defined as any decrease in the medical severity of a claimant's impairment(s) based on changes in the symptoms, signs, and/or laboratory findings associated with the claimant's impairment(s). *See* 20 C.F.R. § 404.1594(b)(1); *see also*, 20 C.F.R. §§ 404.1502(c), (g), (j). If a claimant has experienced medical improvement, the ALJ must determine if the medical improvement relates to the claimant's ability to work. *See* 20 C.F.R. § 404.1594(f)(4). Generally, medical improvement relates to a claimant's ability to work if the claimant has had a decrease in the severity of her impairment(s) and her RFC has increased. *See* 20 C.F.R. § 404.1594(b)(3), (c)(2). If medical improvement is established and related to a claimant's ability to work, the ALJ will decide if the claimant's current impairment(s) is severe. *See* 20 C.F.R. §§ 404.1594(f)(6). If the claimant has a severe impairment, the ALJ then will assess the claimant's current RFC and determine if she can do her past relevant work or other work. *See* 20 C.F.R. §§ 404.1594(f)(7), (8).

Here, the ALJ found that Plaintiff experienced medical improvement as of October 12, 2017. After Plaintiff's visit with Dr. White on October 11, 2017, and after her last surgery, he released her from his care when he found that her x-rays looked good, stated she did not need therapy, and found that she was "doing excellent." Subsequent examinations revealed findings such as no swelling, tenderness, redness, or deformity of the joint; normal extremities; intact deep tendon reflexes; normal strength and tone; normal extremities movement; good range of motion of the lumbar spine with no tenderness; and normal gait and station. (Tr. 162, 806, 807, 821,822, 852, 889,890, 891, 893, 894, 895, 913-918, 977, 978). Of course, even if Plaintiff still had some

pain, discomfort, or was receiving some treatment, that does not discount the fact that the medical severity of her impairments decreased, and she was reported to be doing well and feeling better on multiple occasions after October 11, 2017.

Therefore, the ALJ did not err in finding that there was substantial evidence of a decrease in the severity of Plaintiff's impairments thus indicating medical improvement and an increase in Plaintiff's RFC.

**b.      The ALJ Did Not Err and Applied the Correct Legal Standards**

Plaintiff contends that the ALJ did not apply the correct legal standards when he found there was substantial evidence of medical improvement because (1) the ALJ did not compare Plaintiff's original medical records to the "new" medical evidence and (2) because he should have ordered a consultative examination. (Doc. #16 at 14).

Plaintiff cites *Klaes v. Commissioner of Social Security*, 719 Fed. Appx. 893, 896 (11th Cir. 2017), which notes that most claimants in conjunction with any continuing disability review are given another consultative exam to determine whether there has been medical improvement to the point of no disability. Plaintiff also cites *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003), which provides that the ALJ has a duty to develop a full and fair record, especially in a case where termination of benefits is decided.

This court has found no record support for the proposition that the ALJ did not apply the correct legal standards and that he did not compare the original medical records to any "new" medical records. In determining whether the ALJ has fully developed the record, the court looks at the record to see if it contains evidentiary gaps that result in unfairness or clear prejudice. *See Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). Furthermore, an ALJ only needs to order a consultative examination if there is insufficient evidence in the record to make an informed

decision. 20 C.F.R. § 404.1519(a); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). *See also*, *Castle v. Colvin*, 557 F.App'x 849, 11th Cir. 2014) (holding a consultative exam was not necessary where the record contained sufficient evidence to support ALJ's finding.)

The case at bar is not one involving a continuing disability;[2] therefore, a consultative examination was not needed. Plaintiff's statement that most claimants get another consultative examination is unfounded. *Klaes*, 719 F. App'x 893, 896 (11th Cir. 2017). Also, a consultative examination is unnecessary because there are no evidentiary gaps in the record that would indicate there is insufficient evidence in the record to make an informed decision. And, Plaintiff has not attempted to point any such evidentiary gaps.

Further, in his decision, the ALJ extensively described Plaintiff's testimony that related to the period from 2015 to 2019. (Tr. 156). The ALJ specifically noted that Plaintiff reported the same symptoms and allegations from her alleged onset date to the date of the hearing. Additionally, the ALJ acknowledged Plaintiff's testimony about the period prior to and beginning on October 12, 2017, finding Plaintiff's testimony to be consistent after October 11, 2017; therefore, the ALJ determined the subjective testimony was inconsistent with normal objective medical findings. (Tr. 162). The record shows normal objective medical findings such as: no swelling, tenderness, redness or deformity of the joints; normal extremities; intact deep tendon reflexes; normal strength and tone; normal extremities movement; good range of motion of the lumbar spine with no tenderness; normal gait and station; a normal cervical spine MRI, and evidence of improvement with the treatment; a lack of reports of neck pain; and advanced daily activities (*i.e.* walking three

---

[2] A continuing disability review ("CDR") is a periodic review of eligibility for disabled beneficiaries at least every 3 years except where a finding has been made that such disability is permanent. The CDR process is to determine if an individual's impairment(s) has improved since the most recent favorable determination (or if an exception to medical improvement applies).

miles). (Tr. 162-64, 806-07, 821-22, 852, 889-91, 893-95, 913-18, 977-86). For these reasons, the ALJ properly discounted Plaintiff's subjective testimony. *See* C.F.R. §§ 404.1529(c)(2), (3)(i), (iv), (v); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1266 (11th Cir. 2002) (holding an ALJ properly discredited claimant's testimony regarding his degree of impairment where that testimony was not consistent with objective medical evidence, daily activities, limited use of pain medication, and effectiveness of treatment).

Finally, the court concludes the ALJ compared Plaintiff's "new" medical records to her original medical records and thus was not required to order a consultative examination.

## VI.    Conclusion

After careful review, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this July 21, 2021.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

13